ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| CARMEN IRIS CRUZ FIGUEROA<br><br>Apelante<br><br>v.<br><br>JUAN MARCOS JOAQUÍN HIDALGO Y OTROS<br><br>Apelada | KLCE202401140 | *CERTIORARI,* **acogido como** ***APELACIÓN*** procedente del Tribunal de Primera Instancia, Sala de Carolina<br><br>Caso Núm. CA2019CV01732<br><br>Sobre: Liquidación de Comunidad de Bienes |

Panel integrado por su presidente el juez Bermúdez Torres, el juez Adames Soto y la juez Aldebol Mora.

Aldebol Mora, Juez Ponente

# SENTENCIA

En San Juan, Puerto Rico, a 6 de marzo de 2025.

Comparece la parte apelante, Carmen I. Cruz Figueroa, mediante el recurso de epígrafe y nos solicita que revoquemos la *Resolución* y la *Sentencia Parcial* emitidas y notificadas por el Tribunal de Primera Instancia, Sala Superior de Carolina, el 20 de septiembre de 2024. Mediante la referida *Resolución,* el foro primario anotó la rebeldía de la apelante en cuanto a la reconvención instada por Juan M. Joaquín Hidalgo. Por otro lado, mediante la mencionada *Sentencia Parcial,* el foro sentenciador desestimó todas las causas de acción incoadas en contra de la parte apelada, ADCON Corp., la Asociación de Residentes de Bosques del Lago y Juan M. Joaquín Hidalgo.

Por los fundamentos que expondremos a continuación, se confirman los dictámenes apelados.

**I**

El 16 de mayo de 2019, Carmen I. Cruz Figueroa (Cruz Figueroa o apelante) incoó una *Demanda* sobre liquidación de comunidad de bienes, *injunction* y daños y perjuicios en contra de Juan M. Joaquín Hidalgo (Joaquín Hidalgo o apelado), ADCON Corp. (ADCON o apelado), Capitol Security Police, Inc. (CSP),[1] la Asociación de Residentes de Bosques del Lago (Asociación de Residentes o apelado), JJ Investments Corp., Isla Bonita Restaurant, Inc. y Edgardo E. Ortiz Batista (codemandados).[2] En síntesis, alegó que convivió como pareja con Joaquín Hidalgo durante más de veinte (20) años en público concubinato y procrearon dos hijos menores de edad. Arguyó que, como parte de la relación, creó una comunidad de bienes con Joaquín Hidalgo, mediante la cual adquirieron bienes y deudas, además de trabajar en conjunto en un negocio llamado "Joaquín & Asociados".

En la acción de epígrafe, Cruz Figueroa planteó que descubrió inadvertidamente que Joaquín Hidalgo estaba ocultándole negocios, cuentas, acuerdos, inversiones, compra de bienes raíces, transacciones, entre otras cosas, que este realizó utilizando dinero generado como parte del negocio que tenían en conjunto. Planteó, además, que Joaquín Hidalgo intentó, por medio de intimidación, prohibir e impedir que tuviera acceso a la información del negocio y

---

[1] Cabe señalar que, mediante *Orden* emitida el 25 de noviembre de 2019, notificada el 17 de diciembre del mismo año, el Tribunal de Primera Instancia –a petición de Cruz Figueroa– anotó la rebeldía de ADCON y CSP. Véase, Entradas Núm. 63 y 64 del Caso Núm. CA2019CV01732 en el Sistema Unificado de Manejo y Administración de Casos (SUMAC). No obstante, surge de la *Minuta* del 18 de febrero de 2020, que el foro primario le concedió un término a CSP para que presentara su contestación a la demanda. Véase, Entrada Núm. 107 del Caso Núm. CA2019CV01732 en el SUMAC. Por su parte, ADCON presentó su alegación responsiva el 30 de junio de 2020. Véase, Entrada Núm. 134 del Caso Núm. CA2019CV01732 en el SUMAC.

[2] Apéndice del recurso, págs. 5-31. El 24 de enero de 2020, notificada el 28 del mismo mes y año, el foro apelado emitió una *Orden* mediante la cual anotó la rebeldía de Edgardo E. Ortiz Batista, Isla Bonita Restaurant, Inc. y JJ Investments Corp. Véase, Apéndice del recurso, págs. 47-48. Sin embargo, el foro *a quo* reconsideró y levantó la rebeldía de JJ Investments. Posteriormente, el foro juzgador emitió una *Sentencia Parcial* mediante la cual desestimó sin perjuicio la causa de acción de epígrafe a favor de JJ Investments. Véase, Entrada Núm. 167 del Caso Núm. CA2019CV01732 en el SUMAC.

a las propiedades pertenecientes a la comunidad de bienes compuesta por ambos. Según adujo, lo anterior, entre otras actuaciones por parte de Joaquín Hidalgo, le causaron daños emocionales y angustias mentales. Por otro lado, argumentó que los codemandados, en confabulación con Joaquín Hidalgo, permitieron y provocaron serios daños económicos, además de daños emocionales y angustias mentales.

En virtud de lo anterior, Cruz Figueroa solicitó varias sumas de dinero por concepto de daños económicos, contractuales y emocionales. A su vez, solicitó un *injunction* para que Joaquín Hidalgo, la Asociación de Residentes, ADCON y CSP se abstuvieran de privarla del acceso a su propiedad. Igualmente, solicitó la liquidación de la comunidad de bienes compuesta por Joaquín Hidalgo y esta.

Por su parte, el 19 de julio de 2019, Joaquín Hidalgo presentó su alegación responsiva.[3] En esencia, negó las alegaciones en su contra. Sin embargo, admitió que existía una comunidad de bienes entre Cruz Figueroa y este, por lo que procedía su liquidación, conforme a Derecho. No obstante, alegó que Cruz Figueroa pretendía que se liquidaran bienes que no eran pertenecientes a la comunidad compuesta por ambos. Sobre ello, especificó que la mencionada comunidad estaba compuesta por dos inmuebles, uno sito en Carolina y otro en Trujillo Alto. Por otro lado, aseguró que la compañía Joaquín & Associates era privativa y que Cruz Figueroa no tenía ninguna participación en ella.

A su vez, Joaquín Hidalgo instó una *Reconvención,* mediante la cual argumentó que, si bien procedía la liquidación de la referida comunidad de bienes, este tenía unos créditos por los pagos realizados en el financiamiento de las propiedades que conformaban

---

[3] Apéndice del recurso, págs. 66-86.

la comunidad.[4] Según adujo, aunque en la escritura de compraventa del inmueble ubicado en Carolina se hizo constar que este se adquirió a razón de un cincuenta por ciento (50%) de cada parte, la realidad era que él fue quien pagó la totalidad del precio de compraventa. Arguyó que Cruz Figueroa no había aportado ninguna cantidad dirigida a dicho negocio jurídico, por lo que él tenía un crédito a su favor por los pagos dirigidos a la hipoteca que gravaba a esa propiedad, entre otros gastos dirigidos a dicho inmueble. En cuanto a la propiedad sita en Trujillo Alto, planteó que también tenía unos créditos por los pagos que realizaba a la hipoteca de esta, así como otros gastos que incurrió sobre dicho inmueble. Alegó que Cruz Figueroa tampoco había aportado a dichos pagos, con excepción de un periodo de veinticinco (25) meses en los que pagó el referido gravamen con el dinero de un alquiler existente en ese momento. En vista de lo anterior, solicitó la liquidación de la comunidad de bienes entre Cruz Figueroa y este, con la otorgación de los créditos alegados y la devolución de varios bienes muebles pertenecientes a él que se encontraban en la posesión de Cruz Figueroa.

Por otro lado, Joaquín Hidalgo sostuvo que Cruz Figueroa le ocasionó daños al apropiarse ilegalmente de varias de sus pertenencias, realizar alteraciones a uno de sus inmuebles sin el consentimiento para ello, intervenir indebidamente en su apartado postal y desviar la correspondencia dirigida a este y sus negocios, así como utilizar el sistema judicial para causarle daño mediante engaños y acusaciones frívolas. Por tal razón, solicitó el pago de $77,500.00 por concepto de daños económicos y emocionales.

El 11 de octubre de 2019, la Asociación de Residentes presentó su *Contestación a Demanda*.[5] Posteriormente, CSP también

---

[4] Apéndice del recurso, págs. 66-86.
[5] Entrada Núm. 58 del Caso Núm. CA2019CV01732 en el SUMAC.

sometió su alegación responsiva.[6] En síntesis, ambos negaron las alegaciones esbozadas en su contra.

En respuesta a la *Reconvención*, el 13 de diciembre de 2019, Cruz Figueroa replicó.[7] Negó que se le debía reconocer algún crédito a Joaquín Hidalgo por los pagos dirigidos al financiamiento de las propiedades en cuestión, toda vez que estos fueron realizados con dinero perteneciente a la comunidad de bienes. También rechazó haberse apropiado ilegalmente de bienes muebles pertenecientes a Joaquín Hidalgo, realizar alteraciones a uno de los inmuebles en controversia e intervenir con la correspondencia de este.

Luego de múltiples trámites procesales, entre los que se encontraron varias solicitudes de desestimación, sentencia sumaria, descalificación y anotaciones de rebeldía, ello en el contexto del comienzo de la pandemia por COVID-19 y otros eventos atmosféricos que ocurrieron en la isla, el 17 de junio de 2022, se celebró una vista sobre el estado de los procedimientos.[8] En lo pertinente, surge de la *Minuta* que se coordinaron unas deposiciones de la siguiente forma: (a) Christian Colón el 15 de septiembre de 2022 a las 10:00 a.m.; (b) Joaquín Hidalgo el 16 de septiembre de 2022 a las 2:00 p.m.; y (c) Cruz Figueroa el 23 de septiembre de 2022 a las 10:00 a.m.

Así las cosas, el 15 de septiembre de 2022, Joaquín Hidalgo presentó un escrito al expediente.[9] En esencia, informó que llevaría a cabo la deposición a Cruz Figueroa el 23 de septiembre de 2022, conforme a lo pautado en la referida vista.

El día siguiente, Cruz Figueroa sometió una moción mediante la cual objetó el referido aviso de deposición.[10] En síntesis, alegó que Joaquín Hidalgo incumplió con las Reglas 27.2 y 31.2 de

---

[6] Entrada Núm. 170 del Caso Núm. CA2019CV01732 en el SUMAC.
[7] Entrada Núm. 62 del Caso Núm. CA2019CV01732 en el SUMAC.
[8] Entrada Núm. 193 del Caso Núm. CA2019CV01732 en el SUMAC.
[9] Entrada Núm. 213 del Caso Núm. CA2019CV01732 en el SUMAC.
[10] Entrada Núm. 215 del Caso Núm. CA2019CV01732 en el SUMAC.

Procedimiento Civil, 32 LPRA Ap. V, R. 27.2 y 31.2; es decir, que la toma de deposición se notificó con menos de veinte (20) días de anticipación.

En desacuerdo, el 17 de septiembre de 2022, Joaquín Hidalgo replicó.[11] Arguyó que la mencionada deposición fue coordinada con Cruz Figueroa en la vista del 17 de junio de 2022, por lo que dicha parte sabía de antemano que iba a tener una deposición el 23 de septiembre de 2022. Enfatizó que las representaciones legales de las partes coordinaron la referida deposición noventa y ocho (98) días previo al aviso.

En atención a la objeción de Cruz Figueroa, el 16 de septiembre de 2022, notificada el 21 del mismo mes y año, el foro primario emitió una *Orden*, mediante la cual dictaminó que dicha parte debía cumplir con la Regla 34 de Procedimiento Civil, 32 LPRA Ap. V, R. 34, sobre las controversias en torno al descubrimiento de prueba, así como la negativa a descubrir lo solicitado y sus consecuencias.[12] A su vez, el 22 de septiembre de 2022, el foro *a quo* ordenó que se llevara a cabo la deposición en cuestión.[13]

El 22 de septiembre de 2022, Joaquín Hidalgo instó una moción urgente en la cual informó que la toma de deposición de Cruz Figueroa fue cancelada.[14] Especificó que, el día anterior, recibió una comunicación por correo electrónico del representante legal de Cruz Figueroa en la cual justificó la suspensión de la deposición porque no se encontraba preparado para esta y porque su representada le expresó no tener transporte, servicio de agua, ni internet, así como un servicio de electricidad intermitente, por el paso del huracán Fiona. Arguyó que dichas razones no eran justa causa, toda vez que la urbanización en la que residía Cruz Figueroa

---

[11] Entrada Núm. 216 del Caso Núm. CA2019CV01732 en el SUMAC.
[12] Entrada Núm. 217 del Caso Núm. CA2019CV01732 en el SUMAC.
[13] Entrada Núm. 218 del Caso Núm. CA2019CV01732 en el SUMAC.
[14] Entrada Núm. 219 del Caso Núm. CA2019CV01732 en el SUMAC.

tenía servicio de agua y luz desde el 19 de septiembre de 2022 y esta podía utilizar los servicios de la compañía *Uber* como medio de transporte, ya que era un servicio que había utilizado anteriormente. Según adujo, intentó coordinar con dicho representante legal una nueva fecha para la toma de deposición, pero al momento de presentar esta moción, no había recibido respuesta, por lo que solicitó que el tribunal ordenara un término perentorio para que Cruz Figueroa informara la fecha hábil para la deposición.

Atendida la solicitud, el 23 de septiembre de 2022, notificada el 26 del mismo mes y año, el foro apelado emitió una *Orden* mediante la cual expresó lo siguiente: "Se ordena la toma de deposición para el 5 de octubre a las 1:00pm. NO HABRÁ EXCUSAS PARA LA TOMA DE LA DEPOSICIÓN".[15]

En desacuerdo, el 29 de septiembre de 2022, Cruz Figueroa presentó una *Urgente Solicitud de Reconsideración.*[16] Indicó que el foro juzgador emitió la determinación anterior sin contar con su postura. Argumentó que tal actuación constituyó una violación al debido proceso de ley porque se le privó del derecho a ser oída. Por ello, solicitó que el tribunal de instancia reconsiderara la determinación y atendiera sus planteamientos conforme a Derecho.

Junto a su moción de reconsideración, Cruz Figueroa incluyó una réplica a la moción urgente presentada por Joaquín Hidalgo. En síntesis, indicó que el paso del huracán Fiona el 17 de septiembre de 2022 provocó la pérdida de servicios esenciales de energía eléctrica y agua potable, así como comunicación vía internet y telefonía en todo Puerto Rico. Señaló que, ante dicha situación, el Poder Judicial ordenó la recalendarización de las vistas e incluso la extensión de todo término hasta el 10 de octubre de 2022. A su vez, describió la situación que estaba enfrentado en la propiedad donde

---

[15] Entrada Núm. 220 del Caso Núm. CA2019CV01732 en el SUMAC.
[16] Entrada Núm. 223 del Caso Núm. CA2019CV01732 en el SUMAC.

residía, las interrupciones de electricidad y agua potable, al igual que la falta de transporte para ir a la toma de deposición, incluyendo lo costoso que sería utilizar el servicio de *Uber* cuando no contaba con fuentes de ingreso. Por otro lado, alegó que, por recomendación del foro primario, se encontraba bajo tratamiento psicológico y seguía siendo víctima de violencia de género en su modalidad emocional y psicológica por parte de Joaquín Hidalgo. Sobre ello, añadió que había solicitado una orden de protección contra Joaquín Hidalgo, la cual se encontraba pendiente de adjudicación en la Sala de Investigaciones del Centro Judicial de San Juan. Según adujo, por recomendación de la psicóloga, no podía someterse en ese momento a una toma de deposición presencial frente a Joaquín Hidalgo. Planteó que en ningún momento se estaba negando a comparecer a la deposición, sino que quería poder comparecer y servir debidamente como deponente, lo cual era parte de su derecho a defenderse adecuadamente de las alegaciones esbozadas en su contra. En vista de lo anterior, solicitó la recalendarización de la deposición y que esta fuera realizada por videoconferencia con el fin de subsanar su problema de transportación y salud.

Evaluada la solicitud de reconsideración, el 29 de septiembre de 2022, el Tribunal de Primera Instancia emitió y notificó una *Orden* mediante la cual reconsideró su determinación.[17] En virtud de la extensión de términos concedida por el Tribunal Supremo de Puerto Rico por el paso del huracán Fiona, concedió hasta el 11 de octubre de 2022 para que Cruz Figueroa presentara su postura en cuanto a la moción urgente instada por Joaquín Hidalgo. A su vez, el foro *a quo* enfatizó que:

> Este Tribunal no le viola los derechos a nadie. Lo que aspira esta Juez es a que en este caso se agilicen los procedimientos que se han visto detenidos en muchas ocasiones por asuntos que no tienen que ver con la litigación normal. Lo importante en este caso [es] que se

---

[17] Entrada Núm. 224 del Caso Núm. CA2019CV01732 en el SUMAC.

tomen las deposiciones sin dilación. Lo prudente sería que revisara si puede celebrar la deposición en la fecha en que pueden todos los abogados y que puede dar su posición a la misma vez.

Transcurrido el referido término, el 12 de octubre de 2022, el foro de origen emitió una *Orden* en la que hizo constar que Cruz Figueroa no acreditó su postura.[18] Por tal razón, ordenó a que las partes le informaran la fecha en que se celebraría la deposición.

El 12 de octubre de 2022, la representación legal de Cruz Figueroa sometió una *Moción Informativa y en Cumplimiento de Orden*.[19] Alegó que intentó en múltiples ocasiones contactar a Cruz Figueroa, pero no fue hasta el 6 de octubre de 2022 que logró contactarla. Especificó que, en una comunicación escrita, Cruz Figueroa le informó que no había podido responderle porque se encontraba bajo tratamiento médico, lo cual incluía medicamentos que le ocasionaban un sueño pesado, por lo que no se encontraba en condiciones aptas. Indicó las fechas que tenía disponibles para realizar la toma de deposición (12 al 16 y 19 al 21 de diciembre de 2022) y solicitó que esta fuera por videoconferencia, en consideración de la situación de transporte y económica de Cruz Figueroa. Señaló que lo anterior fue informado a Joaquín Hidalgo por correo electrónico el 7 de octubre de 2022, pero no había recibido respuesta.

Por su parte, el 12 de octubre de 2022, Joaquín Hidalgo presentó una moción solicitando que se establezca la fecha para tomar la deposición de Cruz Figueroa.[20] En síntesis, informó que las partes tenían disponible el 16 de noviembre de 2022 para la toma de deposición de dicha parte. Resaltó que había sido el único que había cursado un aviso de deposición, pero no la había podido llevar a cabo por eventos ajenos atribuibles a Cruz Figueroa o a su

---

[18] Entrada Núm. 225 del Caso Núm. CA2019CV01732 en el SUMAC.
[19] Entrada Núm. 226 del Caso Núm. CA2019CV01732 en el SUMAC.
[20] Entrada Núm. 227 del Caso Núm. CA2019CV01732 en el SUMAC.

representación legal. Por tanto, solicitó que el tribunal ordenara la toma de deposición de Cruz Figueroa el 16 de noviembre de 2022.

Cruz Figueroa se opuso el 13 de octubre de 2022.[21] Arguyó que había reservado el 16 de noviembre de 2022 para realizar dos (2) deposiciones a algunos codemandados, pero le restaba enviar el correspondiente *Aviso de Toma de Deposición* y *Solicitud de Producción de Documentos*. Por otro lado, planteó que, a pesar de que le había informado –de buena fe– a Joaquín Hidalgo las circunstancias particulares que tenía, incluyendo su tratamiento de salud y la falta de transportación, también le informó la falta de disponibilidad para la mencionada fecha. Indicó que, por ello, le notificó a Joaquín Hidalgo varias fechas que tenía disponibles, de las cuales este último no confirmó ninguna. En virtud de lo anterior, solicitó que se establecieran fechas para la toma de la deposición, según las informadas como disponibles.

El mismo día, Joaquín Hidalgo duplicó.[22] Alegó que, contrario a lo propuesto por Cruz Figueroa, esta nunca había coordinado las deposiciones de los codemandados para el 16 de noviembre de 2022. Añadió que las deposiciones coordinadas en la vista del estado de los procedimientos que Cruz Figueroa le iba a realizar a este y a otro codemandado, fue suspendida por ella misma. Sostuvo que, si Cruz Figueroa tenía disponible el 16 de noviembre de 2022 para realizar otras deposiciones, debía separar un espacio en su agenda para que se le tomara la suya. De otro lado, señaló estar dispuesto a pagar un servicio de transporte para que Cruz Figueroa pudiera asistir a la toma de deposición en el Colegio de Abogados y Abogadas. Según adujo, Cruz Figueroa quería que la deposición fuera en diciembre de 2022, pero sostuvo que tal fecha era irrazonable y constituía una dilación innecesaria. Propuso que la deposición de Cruz Figueroa se

---

[21] Entrada Núm. 229 del Caso Núm. CA2019CV01732 en el SUMAC.
[22] Entrada Núm. 230 del Caso Núm. CA2019CV01732 en el SUMAC.

realizara el 16 de noviembre de 2022, ya que era una fecha hábil para todas las partes. Sobre ese particular, argumentó que, si bien Cruz Figueroa había hecho la gestión de confirmar la disponibilidad de las partes para tomar deposiciones en esa fecha, no había cursado los avisos oficiales correspondientes para deponer a los codemandados. Por tanto, en vista de que Cruz Figueroa estaba disponible el 16 de noviembre de 2022, Joaquín Hidalgo solicitó que el tribunal señalara dicha fecha para la toma de deposición de Cruz Figueroa.

En atención a lo anterior, el 17 de octubre de 2022, el foro *a quo* emitió y notificó a las partes y a sus representantes legales una *Orden*.[23] En particular, ordenó a las partes –en un término perentorio a vencerse el 28 de octubre de 2022– a que informaran en una moción conjunta si estaban disponibles para celebrar la deposición el 16 de noviembre de 2022. Indicó que, de no estar disponibles para dicha fecha, las partes debían coordinar una nueva fecha e informarla en una moción conjunta. Dictaminó que, el incumplir con esta orden sería causa para imponer sanciones económicas a la parte que incumpliera. A su vez, advirtió que tenía la facultad de eliminar las alegaciones de la parte o partes que incumplieran. El foro primario también exhortó a la representación legal de las partes a que examinaran y revisaran con detenimiento lo vertido en esta orden, de modo que abrieran el diálogo efectivo. Expresó que, con ello, evitarían contratiempos futuros o la posibilidad de órdenes que afectaran de alguna manera el descubrimiento de prueba adecuado del caso.

El 28 de octubre de 2022, las partes presentaron una *Moción Conjunta en Cumplimiento de Orden*.[24] En esencia, informaron que las partes no habían podido llegar a un acuerdo en cuanto a quién

---

[23] Entrada Núm. 231 del Caso Núm. CA2019CV01732 en el SUMAC.
[24] Entrada Núm. 236 del Caso Núm. CA2019CV01732 en el SUMAC.

se iba a deponer el 16 de noviembre de 2022. Indicaron que el desacuerdo consistía en que Cruz Figueroa interesaba tomar la deposición de ADCON en horas de la mañana de ese día, mientras que en la tarde quería deponer a Joaquín Hidalgo. Alegaron que Cruz Figueroa sostuvo que no estaba disponible para que le tomaran su deposición ese día, a pesar de que las partes le habían ofrecido múltiples fechas para llevar a cabo la deposición. Por su parte, señalaron que Joaquín Hidalgo insistía en deponer a Cruz Figueroa el 16 de noviembre de 2022. Por otro lado, las partes solicitaron que, en la vista pautada para el 1 de noviembre de 2022, se les permitiera argumentar y expresar sus posturas con relación a quién se debía deponer el 16 de noviembre de 2022, así como coordinar las deposiciones que interesaran tomar las partes.

Atendida la moción, el 28 de octubre de 2022, el foro sentenciador emitió y notificó una *Orden* mediante la cual determinó que el asunto de las deposiciones se discutirá en la vista de estatus por videoconferencia.[25] No obstante, advirtió que cuando las partes instaban una causa de acción se sometían a la jurisdicción del tribunal, por lo que tenían una obligación de cumplir con el descubrimiento de prueba sin menoscabar el descubrimiento del otro. Además, ordenó a las partes a comparecer a la videoconferencia con sus representaciones legales.

Así las cosas, el 1 de noviembre de 2022, se celebró una vista sobre el estado de los procedimientos.[26] Surge de la *Minuta* que la representación legal de Cruz Figueroa informó que esta se encontraba en un tratamiento médico que culminaba en diciembre de ese año. Indicó que Cruz Figueroa estaba disponible del 12 al 16 y del 19 al 21 de diciembre de 2022 para llevar a cabo su deposición y solicitó que fuera por videoconferencia. Alegó que el referido

---

[25] Entrada Núm. 237 del Caso Núm. CA2019CV01732 en el SUMAC.
[26] Entrada Núm. 239 del Caso Núm. CA2019CV01732 en el SUMAC.

tratamiento no le permitía a Cruz Figueroa participar adecuadamente de ese tipo de procedimientos. Asimismo, reiteró que su representada no tenía transportación. De la *Minuta* se desprende que el foro juzgador preguntó si había una certificación médica sobre la situación de Cruz Figueroa, a lo que la representación legal de esta contestó en la negativa, pero indicó que podía proveerla, de ser necesario. Por su lado, la representación legal de Joaquín Hidalgo argumentó que procedía que la deposición de Cruz Figueroa se tomara de forma presencial el 16 de diciembre de 2022, durante todo el día.

Luego de escuchar los argumentos de las partes, el tribunal de instancia determinó que: (1) Se depondría a Joaquín Hidalgo el 2 de diciembre de 2022; (2) Cruz Figueroa sería depuesta el 16 de noviembre de 2022, todo el día, con aviso de *duces tecum*. Advirtió que el incumplimiento con dicho aviso podía provocar la imposición de sanciones; (3) Cruz Figueroa depondría al representante de ADCON y al de la Asociación de Residentes el 10 de enero de 2023. A su vez, el foro apelado señaló una vista sobre el estado de los procedimientos para el 16 de febrero de 2023.

En cumplimiento con lo anterior, el mismo día, Joaquín Hidalgo le cursó a Cruz Figueroa un *Aviso Enmendado de Toma de Deposición Duces Tecum*.[27]

Por su parte, el 14 de noviembre de 2022, Cruz Figueroa presentó un *Escrito al Expediente Judicial* en el que informó que, el 12 de noviembre de 2022, notificó un *Aviso de Toma de Deposición* a todas las partes, en referencia a la toma de deposición a tomarse el 2 de diciembre de 2022 a Joaquín Hidalgo.[28]

---

[27] Entrada Núm. 238 del Caso Núm. CA2019CV01732 en el SUMAC.
[28] Entrada Núm. 241 del Caso Núm. CA2019CV01732 en el SUMAC.

El mismo día, Cruz Figueroa instó una *Urgente Moción Informativa sobre Estado de Salud de la Demandante.*[29] Argumentó que, luego de la celebración de la referida vista, había sufrido una crisis emocional que provocó que fuera atendida por un psiquiatra y, debido a ello, comenzó un tratamiento por el síndrome de estrés post traumático. Especificó que el tratamiento farmacológico causaba sueño y la inhibían de realizar tareas que requerían su atención completa. Asimismo, indicó que parte del tratamiento era permanecer en descanso por treinta (30) días. En vista de ello, solicitó que el tribunal tomara conocimiento de lo anterior y aplazara la toma de deposición hasta que culminara el referido tratamiento en el periodo de treinta (30) días.

Evaluada la moción urgente, el 15 de noviembre de 2022, el Tribunal de Primera Instancia emitió una *Orden* mediante la cual ordenó a las partes a coordinar la deposición de Cruz Figueroa para después del 8 de diciembre de 2022.[30]

Posteriormente, el 11 de enero de 2023, Joaquín Hidalgo sometió una *Moción Informativa y en Solicitud de Orden.*[31] En síntesis, indicó que la deposición de Cruz Figueroa se había recalendarizado para el 10 de enero de 2023. Según adujo, el 5 de enero de 2023, Cruz Figueroa notificó otra excusa médica, con fecha del 16 de diciembre de 2022. Explicó que, basado en dicha excusa, Cruz Figueroa solicitó nuevamente la recalendarización de su deposición. Indicó que, debido a ello, había pautado la mencionada deposición para el 13 de febrero de 2023, fecha que fue confirmada por esta. No obstante, debido al extenso tracto de suspensiones de la deposición de Cruz Figueroa por su indisponibilidad, solicitó que el tribunal ordenara la comparecencia de esta a la deposición y que

---

[29] Entrada Núm. 242 del Caso Núm. CA2019CV01732 en el SUMAC.
[30] Entrada Núm. 243 del Caso Núm. CA2019CV01732 en el SUMAC.
[31] Entrada Núm. 245 del Caso Núm. CA2019CV01732 en el SUMAC.

le advirtiera las consecuencias de su incomparecencia, entre ellas la anotación de rebeldía, eliminación de sus alegaciones y desestimación de su causa de acción.

El mismo día, Joaquín Hidalgo sometió un *Escrito al Expediente Judicial Informando Aviso de Toma de Deposición Duces Tecum.*[32] Señaló que la deposición de Cruz Figueroa se efectuaría el 13 de febrero de 2023. A su vez, en otra moción, informó que había cursado un segundo pliego de interrogatorio y requerimiento de producción de documentos a Cruz Figueroa.[33]

Al día siguiente, el foro primario ordenó que todas las partes comparecieran a la deposición pautada para el 13 de febrero de 2023.[34] Además, solicitó que dicha *Orden* le fuera notificada tanto a las partes como a sus representantes legales.

El 2 de febrero de 2023, Cruz Figueroa presentó un *Escrito al Expediente Judicial.*[35] Informó que había notificado los avisos de toma de deposición a Joaquín Hidalgo, ADCON y a la Asociación de Residentes. Indicó, además, que quedaba pendiente la notificación de las contestaciones a la *Solicitud de Producción de Documentos* circulada a Joaquín Hidalgo el 17 de noviembre de 2022, así como la notificación de las contestaciones al *Pliego de Interrogatorios y Requerimiento de Producción de Documentos* enviada a la Asociación de Residentes el 17 de junio de 2022. Especificó que había notificado a las partes las misivas correspondientes sobre dichos asuntos de conformidad con la Regla 34.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 34.1.

Por su parte, el 14 de febrero de 2023, la Asociación de Residentes y ADCON presentaron una *Moción Solicitando Orden.*[36] Arguyeron que habían intentado coordinar la deposición de Cruz

---

[32] Entrada Núm. 246 del Caso Núm. CA2019CV01732 en el SUMAC.
[33] Entrada Núm. 247 del Caso Núm. CA2019CV01732 en el SUMAC.
[34] Entrada Núm. 248 del Caso Núm. CA2019CV01732 en el SUMAC.
[35] Entrada Núm. 251 del Caso Núm. CA2019CV01732 en el SUMAC.
[36] Entrada Núm. 252 del Caso Núm. CA2019CV01732 en el SUMAC.

Figueroa desde mediados del año 2022, lo cual había resultado infructuoso. Particularizaron que, cada vez que las partes acordaban una fecha, Cruz Figueroa cancelaba la misma a última hora, lo que constituía una actitud continua y temeraria. Indicaron que, ante la última cancelación de la deposición, las partes la recalendarización para el 10 de enero de 2023, pero también fue cancelada. Alegaron que la última fecha acordada entre las partes para la deposición de Cruz Figueroa era para el 13 de febrero de 2023, pero el 9 del mismo mes y año, a las 8:51 p.m., el representante legal de esta notificó que tendría que ser cancelada nuevamente. Sostuvieron que dicha notificación incluía una *Certificación Médica* que señalaba que, por recomendación médica, Cruz Figueroa debía evitar todo tipo de asunto estresante o que pudiera alterar su estado de ánimo.

La Asociación de Residentes y ADCON argumentaron en su moción que no era la primera vez que Cruz Figueroa cancelaba su deposición, por lo que las excusas se habían tornado inaceptables. Arguyeron que el descubrimiento de prueba se estaba afectando por estas cancelaciones. Plantearon que Cruz Figueroa, como parte demandante, era quien tenía que mover los procedimientos sin dilación alguna, pero que obstaculizaba el descubrimiento de prueba al cancelar su deposición una y otra vez. En virtud de lo anterior, solicitaron que se le impusieran sanciones a Cruz Figueroa por haber cancelado su deposición y desestimara la acción de epígrafe hasta tanto dicha parte estuviera en una situación de salud en la que pudiera participar activamente en los procedimientos legales.

En igual fecha, Joaquín Hidalgo instó una *Solicitud de Eliminación de Alegaciones por Incumplimiento Reiterado con*

*Órdenes sobre Descubrimiento de Prueba.*[37] En esencia, solicitó que se eliminaran las alegaciones esbozadas en la *Demanda* incoada por Cruz Figueroa, así como las detalladas en la contestación a la reconvención de la acción de epígrafe, de modo que se procediera a liquidar los inmuebles que alegaba conformaban la comunidad de bienes. En apoyo a su contención, indicó que la deposición de Cruz Figueroa pautada para el 13 de febrero de 2023 fue suspendida, al igual que la pautada para el 23 de septiembre de 2022, 5 de octubre de 2022, 16 de noviembre de 2022 y 10 de enero de 2023, por causas atribuibles exclusivamente a Cruz Figueroa, a pesar de las múltiples órdenes y apercibimientos del tribunal. Reiteró lo alegado por la Asociación de Residentes y ADCON, pero especificó que la certificación médica instruía a Cruz Figueroa a permanecer en reposo por dos (2) meses. No obstante, adujo que la representación legal de Cruz Figueroa le confirmó que las deposiciones que su representada le quería hacer a ciertos codemandados en el mes de marzo de 2023 seguían en pie. Enfatizó que Cruz Figueroa estaba indispuesta para comparecer a su toma de deposición, mas no para deponer a los codemandados. Por otro lado, según adujo, Cruz Figueroa no había contestado el interrogatorio circulado ni producido ningún documento solicitado en los avisos de toma de deposición, a pesar de haber manifestado que los tenía. Sostuvo que el tracto procesal del caso mostraba que Cruz Figueroa incumplió con el proceso de descubrimiento de prueba.

En atención a ello, el 14 de febrero de 2023, el foro de origen ordenó a que Cruz Figueroa informara, en o antes del 24 de febrero de 2023, las razones por las cuales no debía dictarse sentencia de desistimiento sin perjuicio.[38]

---

[37] Entrada Núm. 253 del Caso Núm. CA2019CV01732 en el SUMAC.
[38] Entrada Núm. 254 del Caso Núm. CA2019CV01732 en el SUMAC.

Pendiente lo anterior, el 16 de febrero de 2023, la Asociación de Residentes y ADCON sometieron una *Moción Informativa*.[39] En síntesis, informaron que le habían enviado a Cruz Figueroa la *Contestación a Primer Pliego de Interrogatorio y Requerimiento de Producción de Documentos* solicitada. De otro lado, alegaron que Cruz Figueroa los mantuvo, desde su comparecencia inicial, en la creencia de que estaría desistiendo con perjuicio, pero, en su lugar, circuló un interrogatorio que tuvo el efecto de aumentar los gastos de litigio innecesariamente. Por tal razón, indicaron que, mediante correo electrónico, le habían solicitado a Cruz Figueroa que notificara en un término de cinco (5) días si desistía con perjuicio de la acción de epígrafe a favor de ellos.

Sobre la moción anterior, el 17 de febrero de 2023, el foro apelado emitió una *Orden* mediante la cual expresó que, en su momento, evaluaría la totalidad del expediente y realizaría las determinaciones correspondientes en Derecho.[40]

El 24 de febrero de 2023, Cruz Figueroa presentó una *Réplica a Solicitud de Eliminación de Alegaciones por Incumplimiento Reiterado con Órdenes sobre Descubrimiento de Prueba*.[41] Sostuvo que Joaquín Hidalgo había incumplido con el descubrimiento de prueba cursado. Planteó que había realizado sus mayores esfuerzos para cumplir con todo lo relacionado al descubrimiento de prueba, incluyendo su toma de deposición. Alegó que había promovido que la toma de deposición a algunos codemandados programada para el 10 de enero de 2023 fuera pospuesta para que se le pudiera tomar a esta la deposición en esa fecha. Arguyó que, el 5 de enero de 2023, le había notificado a su representante legal que su médico, después de reevaluarla, no la dio de alta de su tratamiento y lo extendió hasta

---

[39] Entrada Núm. 256 del Caso Núm. CA2019CV01732 en el SUMAC.
[40] Entrada Núm. 257 del Caso Núm. CA2019CV01732 en el SUMAC.
[41] Entrada Núm. 258 del Caso Núm. CA2019CV01732 en el SUMAC.

el 16 de enero de 2023, lo que le impedía estar disponible para la deposición en cuestión. Señaló que le había solicitado de buena fe a las partes recalendarizar su deposición, así como la de los codemandados, por lo que acordaron realizarla el 13 de febrero de 2023. Arguyó que no estaba incumpliendo ni había dejado de cooperar con el descubrimiento de prueba, pero se encontraba bajo un tratamiento médico que no le permitía participar de forma presencial en la deposición que le querían tomar.

No obstante, Cruz Figueroa indicó en su réplica que, el 9 de febrero de 2023, informó a las partes que no podía participar aún de la toma de deposición porque no se le había dado de alta de su tratamiento. Explicó que su condición había empeorado para el 7 de febrero de 2023, por lo que se le aumentó la dosis del tratamiento farmacológico y se le recomendó reposo total por dos (2) meses. Destacó que su médico también le ordenó evitar todo tipo de asunto estresante o que pudiera alterar su estado de ánimo y afectar su tratamiento, situación que no estaba bajo su control. Alegó que había propuesto fechas disponibles que cumplían con lo ordenado por el galeno, pero lo único que recibió fue una misiva de Joaquín Hidalgo solicitando que se le confirmara la cancelación de la toma de deposición de los codemandados pautada para el 23 y 28 de marzo de 2023. Según adujo, no existía razón alguna para la cancelación de esa deposición, por lo que le informó a Joaquín Hidalgo que no se pospondría. Argumentó que, si bien cumplió con lo dispuesto en la Regla 34.1 de Procedimiento Civil, *supra*, su gestión para coordinar su deposición no fue contestada.

Cruz Figueroa sostuvo en su moción que la razón por la cual su condición de salud se había exacerbado era por las interrupciones a su tratamiento ocasionadas por los trámites procesales promovidos por Joaquín Hidalgo en un pleito atendido en una sala de familia del tribunal. Particularizó que en dicho caso

carecía de representación legal y existía una determinación del foro primario que le impedía autorepresentarse; no obstante, Joaquín Hidalgo había presentado mociones constantemente con el único fin de hostigarla y oprimirla, lo que interrumpía su tratamiento y agravaba su salud. Argumentó que, lo anterior, entre otras actuaciones de Joaquín Hidalgo, como privarla de los servicios de agua potable y energía eléctrica en la propiedad en la cual residía con sus hijos menores, agravaron su situación médica y este lo utilizó para indicar que esta incumplía con el descubrimiento de prueba sin justa causa.

En particular, Cruz Figueroa sostuvo en su escrito que Joaquín Hidalgo no cumplió con las gestiones oportunas –de buena fe– requeridas por la Regla 34.1 de Procedimiento Civil, *supra,* para resolver cualquier controversia relacionada al descubrimiento de prueba. Señaló que tampoco se había emitido una orden al amparo de la Regla 34.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 34.2, que resolviera el presunto incumplimiento de esta. Reiteró que las ocasiones en las que no había podido cumplir –por justa causa– con la deposición programada, lo había informado oportunamente, tanto a las partes como al tribunal. Alegó que se encontraba en toda la disposición de cumplir con el descubrimiento de prueba, pero no estaba apta para poder responder preguntas en una deposición presencial que será el día completo, debido al tratamiento médico al que se estaba sometiendo, que comprometía su capacidad de responder interrogantes y le impedía hasta conducir. En vista de ello, solicitó que se declarara No Ha Lugar lo solicitado por Joaquín Hidalgo y se recalendarizara su deposición hasta tanto estuviera de alta de su tratamiento, el cual estaba supuesto a finalizar en dos (2) meses contados a partir del 7 de febrero de 2023.

El mismo día, Cruz Figueroa sometió una segunda moción intitulada *Réplica a Moción Solicitando Orden.*[42] Adujo que, contrario a lo propuesto por la Asociación de Residentes y ADCON, estas no habían intentado coordinar la deposición de Cruz Figueroa desde mediados del año 2022. Arguyó que el 27 de junio de 2022 se programó, por primera ocasión, su deposición a solicitud de Joaquín Hidalgo para el 23 de septiembre de 2022. Según planteó, la controversia real surgió cuando su condición de salud empeoró y, desde el 9 de febrero de 2023, solicitó la recandelarización de la referida deposición, a lo que ninguno de los codemandados se opuso, hasta el 14 de febrero de 2023. Puntualizó que su situación de salud no era un pretexto, excusa o subterfugio para ser depuesta. En apoyo a su alegación, detalló los fármacos que le recetaron y los efectos que estos provocaban en ella, entre ellos la inhibición de su capacidad. Arguyó que el cumplimiento con el descubrimiento de prueba era deber de todas las partes, pero la Asociación de Residentes y Joaquín Hidalgo habían incumplido con la solicitud de producción de documentos cursada a mediados del año 2022.

Cruz Figueroa aclaró en su moción que no incumplió con la *Orden* del 1 de noviembre de 2022, ni dejó de comparecer a la deposición del 16 de noviembre de 2022 porque esta fue cancelada por el propio tribunal a solicitud de esta. Insistió que las cancelaciones posteriores fueron por razones justificadas que le impidieron participar de la deposición en cuestión. Alegó que aún quedaba descubrimiento de prueba pendiente, más allá de su deposición, y ninguna de las partes había realizado gestiones oportunas para resolver la controversia, según exigía la precitada Regla 34.1 de Procedimiento Civil. Planteó que, por lo anterior, no ameritaba la desestimación sin perjuicio del caso, la imposición de

---

[42] Entrada Núm. 259 del Caso Núm. CA2019CV01732 en el SUMAC.

sanciones, ni la eliminación de sus alegaciones, sino que procedía que se le permitiera continuar con su tratamiento médico y, posteriormente, participar de la deposición solicitada, así como la continuación del descubrimiento de prueba restante.

En igual fecha, Cruz Figueroa instó un tercer escrito intitulado *Solicitud de Orden al Amparo de la Regla 34.2 de las de Procedimiento Civil*.[43] Alegó que, el 17 de noviembre de 2022, le había notificado a Joaquín Hidalgo una *Solicitud de Producción de Documentos*, la cual debió ser contestada el 2 de diciembre de 2022, pero no lo fue. Sostuvo que, ante dicho incumplimiento, le había concedido un término de siete (7) días a Joaquín Hidalgo al amparo de la Regla 34.1 de Procedimiento Civil, *supra,* para que notificara las contestaciones al requerimiento de documentos, lo que resultó ser infructuoso. Adujo que había agotado todas las gestiones para lograr que se notificaran dichas contestaciones, sin éxito. Ante el presunto incumplimiento de Joaquín Hidalgo, solicitó que el tribunal emitiera la orden correspondiente para obligar a Joaquín Hidalgo a notificar sus contestaciones al requerimiento de producción de documentos, en un término de cinco (5) días. Igualmente, solicitó la imposición de honorarios de abogado a su favor, a manera de sanción.

Por su parte, el 2 de marzo de 2023, Joaquín Hidalgo duplicó la oposición de Cruz Figueroa a su solicitud de eliminación de alegaciones.[44] Reiteró que todas las suspensiones de la deposición de Cruz Figueroa fueron ocasionadas por ella, mientras que él había procurado cumplir con el descubrimiento de prueba. Argumentó que, además de no poder ser depuesta, Cruz Figueroa tampoco había producido los documentos requeridos mediante aviso *duces tecum,* ni había contestado el segundo interrogatorio cursado, cuyo

---

[43] Entrada Núm. 260 del Caso Núm. CA2019CV01732 en el SUMAC.
[44] Entrada Núm. 264 del Caso Núm. CA2019CV01732 en el SUMAC.

término estaba vencido. Planteó que, ante los graves problemas procesales relacionados al descubrimiento de prueba, por acciones atribuibles únicamente a Cruz Figueroa, procedía la solicitud de eliminación de las alegaciones de la *Demanda*.

El mismo día, Joaquín Hidalgo replicó la solicitud de orden al amparo de la Regla 34.2 de Procedimiento Civil, *supra*, instada por Cruz Figueroa.[45] Alegó que había contestado el interrogatorio que Cruz Figueroa le cursó el 7 de mayo de 2021, por lo que había cumplido y descubierto prueba, a diferencia de Cruz Figueroa. Arguyó que dicha parte omitió el hecho de que ella había cancelado el requerimiento de producción de documentos citado para el 2 de diciembre de 2022 en la sede del Colegio de Abogados y Abogadas, porque el representante legal de esta se encontraba mal de salud. Reiteró que Cruz Figueroa no había podido ser depuesta ni había producido ningún documento solicitado, a pesar de la advertencia de imposición de sanciones. Luego de recontar las fechas en las que Cruz Figueroa se encontraba excusada por su tratamiento médico, alegó que, desde el 9 de diciembre hasta el 15 de diciembre de 2022, y desde el 16 de enero hasta el 7 de febrero de 2023, no existió ningún impedimento médico por veintinueve (29) días, que le impidiera a Cruz Figueroa tramitar el descubrimiento de prueba que se le requirió desde octubre y noviembre del 2022. Indicó que, el 11 de enero de 2023, había notificado un segundo interrogatorio a Cruz Figueroa, el cual no había sido contestado. Propuso que Cruz Figueroa pretendía alterar el orden del descubrimiento de prueba y lograr adquirir documentos económicos y personales de este, mientras dilataba por meses la producción de prueba y retrasaba su deposición. Sostuvo que, ante dicho escenario, lo adecuado era que

---

[45] Entrada Núm. 265 del Caso Núm. CA2019CV01732 en el SUMAC.

se adjudicara la moción de eliminación de las alegaciones, a fin de sancionar los reiterados incumplimientos de Cruz Figueroa.

Analizadas las posturas de las partes, el 14 de julio de 2023, el foro sentenciador emitió y notificó una *Resolución* mediante la cual declaró No Ha Lugar la *Solicitud de Eliminación de Alegaciones por Incumplimiento Reiterado con Órdenes Sobre Descubrimiento de Prueba* presentada por Joaquín Hidalgo. A su vez, declaró No Ha Lugar la *Moción Solicitando Orden* instada por la Asociación de Residentes y ADCON.[46] Señaló que la situación médica de Cruz Figueroa justificaba el que se suspendiera la deposición programada; no obstante, dicha parte no había entregado la documentación solicitada ni había producido las contestaciones al segundo pliego de interrogatorio, aun cuando el tribunal le advirtió que el incumplimiento podía conllevar la imposición de sanciones. En particular, el foro apelado indicó que:

> El pleito de marras fue instado por la parte demandante, es esta quien debe tener el interés primordial para que se ventile con prontitud su caso y a quien le corresponde mover los procedimientos sin dilación alguna. No se puede mantener a la parte demandada en este estado de incertidumbre. La parte tiene que participar activamente del pleito que instó.

> En autos, ya se le había apercibido en la vista celebrada en noviembre de 2022 que el incumplimiento con la producción de los documentos pudiese conllevar la imposición de sanciones. Sin embargo, como *[sic]* no se han completado todos los pasos que dispone la regla antes citada. Por lo que, no procede la severa sanción de la desestimación o la eliminación de las alegaciones en esta etapa de los procedimientos.

> Por haber incumplido con la orden emitida de producción de documentos, se le impone una multa de $200 dólares al representante legal de la parte demandante. Notifíquese a los abogados y a las partes. Se le apercibe a la parte demandante que un próximo incumplimiento con las ordenes emitidas por este tribunal, podrá conllevar la desestimación del pleito o la eliminación de las alegaciones.

> En vista de que la situación de salud de la demandante le impide en estos momentos ser depuesta de forma presencial, el tribunal les instruye a las partes de que

---

[46] Entrada Núm. 268 del Caso Núm. CA2019CV01732 en el SUMAC.

tienen disponible la alternativa, que provee la antes citada regla, de tomar la deposición por un método electrónico a distancia. De modo que se pueda dar la misma y podamos continuar con los procedimientos.

El 7 de agosto de 2023, Cruz Figueroa presentó una *Moción Informativa y en Cumplimiento de Orden*.[47] En esencia, acreditó haber notificado, ese mismo día, sus contestaciones al *Requerimiento de Producción de Documentos* y al *Segundo Pliego de Interrogatorios* cursados por Joaquín Hidalgo.

Así las cosas, el 31 de agosto de 2023, el foro primario emitió y notificó una *Orden* mediante la cual expresó que la representación de Cruz Figueroa no había depositado la sanción impuesta.[48] Por otro lado, ordenó a las partes a que informaran si las deposiciones que faltaban se habían celebrado, incluyendo la de Cruz Figueroa. Para ello, concedió un término a vencerse el 6 de septiembre de 2023.

Posteriormente, el 6 de septiembre de 2023, el representante legal de Cruz Figueroa consignó la sanción impuesta ante el foro *a quo*.[49]

El mismo día, Cruz Figueroa presentó una *Moción Informativa y en Cumplimiento de Orden*.[50] Indicó que Joaquín Hidalgo había propuesto fechas (21 al 22 y 25 al 26 de septiembre de 2023, así como días en octubre, noviembre y diciembre del mismo año) para la toma de deposiciones pendientes. Sostuvo que, por su parte, proveyó las fechas que tenía disponibles (13 al 17, 20 al 22 y 27 al 30 de noviembre de 2023) para ese fin. Sobre su deposición, informó que continuaba bajo tratamiento médico, por lo que solicitó que esta fuera celebrada por videoconferencia y que no se extendiera durante todo el día. Según adujo, aún no recibía respuesta de ninguna de las partes para calendarizar las deposiciones en cuestión. Por otro

---

[47] Entrada Núm. 270 del Caso Núm. CA2019CV01732 en el SUMAC.
[48] Entrada Núm. 272 del Caso Núm. CA2019CV01732 en el SUMAC.
[49] Entrada Núm. 273 del Caso Núm. CA2019CV01732 en el SUMAC.
[50] Entrada Núm. 274 del Caso Núm. CA2019CV01732 en el SUMAC.

lado, arguyó que ADCON, la Asociación de Residentes y Joaquín Hidalgo no habían notificado sus respuestas a los pliegos de interrogatorios y requerimiento de producción de documentos cursados, cuyos términos estaban vencidos. Planteó que se veía imposibilitada de celebrar las deposiciones de los codemandados sin que se cumpliera primero con el descubrimiento de prueba antes indicado. Por tal razón, solicitó que se emitiera la orden correspondiente para que ADCON, la Asociación de Residentes y Joaquín Hidalgo cumplieran con lo requerido en un término de diez (10) días.

El 6 de septiembre de 2023, Cruz Figueroa presentó una *Moción Informativa y Aclarativa sobre Cumplimiento de Orden.*[51] Informó que Joaquín Hidalgo le notificó que tenía disponible del 27 al 30 de noviembre de 2023 para realizar la deposición de esta de forma presencial, mientras que la de él se podía programar en una fecha posterior. En desacuerdo, reiteró que se encontraba bajo un tratamiento médico y que, por esa razón, había solicitado que su deposición fuera virtual. También se opuso a que su deposición fuera primero que la de Joaquín Hidalgo. A tales efectos, solicitó que el tribunal dispusiera sobre el asunto.

Por su parte, en igual fecha, Joaquín Hidalgo instó una *Moción en Cumplimiento de Orden y en Solicitud de Orden.*[52] Indicó que aún no se coordinaban las deposiciones de ninguna de las partes. Aclaró que, el 29 de julio de 2023, había requerido vía correo electrónico la programación de las deposiciones, pero no fue hasta el 1 de septiembre de 2023 que Cruz Figueroa informó las fechas que tenía disponibles durante el mes de noviembre del mismo año. Por otro lado, se opuso a que la deposición fuera por videoconferencia. Argumentó que, según el expediente médico de Cruz Figueroa, esta

---

[51] Entrada Núm. 275 del Caso Núm. CA2019CV01732 en el SUMAC.
[52] Entrada Núm. 276 del Caso Núm. CA2019CV01732 en el SUMAC.

se encontraba bajo tratamiento médico hasta el 18 de mayo de 2023, por lo que no existía justificación para que su toma de deposición fuera por videoconferencia. Sostuvo que el expediente carecía de excusa médica alguna que afirmara que Cruz Figueroa no podía efectuar una deposición presencial en el Colegio de Abogados y Abogadas. En virtud de lo anterior, solicitó que se ordenara la comparecencia presencial de Cruz Figueroa a su deposición en la fecha que se coordinara. Además, requirió que se le concediera hasta el 29 de septiembre de 2023 para que las partes pudieran programar las deposiciones pendientes.

Atendido el asunto, el 7 de septiembre de 2023, el Tribunal de Primera Instancia emitió y notificó una *Orden*.[53] Concedió el término solicitado para que las partes informaran la calendarización de todas las deposiciones a realizarse. Asimismo, resolvió que, ante la inexistencia de un acuerdo entre las partes, la deposición se celebraría de forma presencial. Por otro lado, determinó que el descubrimiento de prueba documental debía culminar quince (15) días antes de la celebración de la primera deposición. Advirtió que el incumplimiento con esta orden podía provocar la eliminación de las alegaciones. A su vez, citó a una vista el 1 de noviembre de 2023 para discutir los procedimientos y ordenó que se le notificara esta determinación tanto a las partes como a sus respectivas representaciones legales.

Así las cosas, el 13 de septiembre de 2023, Joaquín Hidalgo presentó un *Escrito al Expediente Judicial Informando Aviso de Toma de Deposición a la Demandante*.[54] Informó que, ese día, notificó un *Aviso de Toma de Deposición* a Cruz Figueroa. Indicó que la fecha más próxima que se pudo coordinar entre todas las partes fue el 16 de enero de 2024.

---

[53] Entrada Núm. 278 del Caso Núm. CA2019CV01732 en el SUMAC.
[54] Entrada Núm. 283 del Caso Núm. CA2019CV01732 en el SUMAC.

Por su parte, el 21 de septiembre de 2023, Cruz Figueroa presentó un *Escrito al Expediente Judicial*, mediante el cual informó que había cursado un *Aviso de Toma de Deposición* de Joaquín Hidalgo para el 19 de enero de 2024.[55] Señaló que estaba a la espera de que ADCON y la Asociación de Residentes le confirmaran fechas disponibles para las restantes deposiciones.

Luego de varias incidencias procesales, el 1 de noviembre de 2023, se celebró una vista sobre el estado de los procedimientos en la cual se discutieron los pormenores de los asuntos pendientes del descubrimiento de prueba.[56] En lo pertinente, surge de la *Minuta* que el representante legal de ADCON indicó que llevaba tres (3) años intentando coordinar –sin éxito– fechas para la deposición de Cruz Figueroa. Por su parte, la representación legal de Joaquín Hidalgo expresó que el expediente del caso reflejaba las dilaciones y los intentos de descubrir la prueba que se había tenido durante años. Sobre ello, la juzgadora de los hechos señaló que la acción de epígrafe se había dilatado considerable e injustificadamente, pero que la mejor forma de trabajar el caso era con las Reglas de Procedimiento Civil.

Por otro lado, surgió una controversia sobre la solicitud de producción de documentos y contestación a un segundo pliego de interrogatorio cursados por Cruz Figueroa a Joaquín Hidalgo,[57] lo cual fue atendido por el foro primario en una orden emitida y notificada el 11 de diciembre de 2023.[58] En dicho dictamen, el foro juzgador concedió a Cruz Figueroa un término adicional hasta el 22 de diciembre de 2023 para que cumpliera con lo ordenado. A su vez, le concedió el mismo plazo a Joaquín Hidalgo para que explicara las razones por las cuales no había contestado los referidos

---

[55] Entrada Núm. 285 del Caso Núm. CA2019CV01732 en el SUMAC.
[56] Entrada Núm. 301 del Caso Núm. CA2019CV01732 en el SUMAC.
[57] Entrada Núm. 304 del Caso Núm. CA2019CV01732 en el SUMAC.
[58] Entrada Núm. 305 del Caso Núm. CA2019CV01732 en el SUMAC.

requerimientos o para que cumpliera con estos. Por otro lado, recalcó que, en la última vista, habían discutido y pautado el descubrimiento de prueba, por lo que las partes tenían que cumplir con el mismo, so pena de eliminación de sus respectivas alegaciones.

Con relación a lo anterior, el 22 de diciembre de 2023, Joaquín Hidalgo presentó una moción en la cual informó que había notificado a Cruz Figueroa la contestación del segundo pliego de interrogatorio y el requerimiento de producción de documentos.[59]

El 12 de enero de 2024, Joaquín Hidalgo presentó una *Moción Informativa sobre la Deposición de la Demandante Pautada para el 16 de enero de 2024.*[60] En esencia, indicó que Cruz Figueroa no había producido la totalidad de los documentos requeridos previo al día de la deposición. Informó que, ese mismo día, le solicitó a Cruz Figueroa que el día de la deposición, por lo menos, llevara la documentación solicitada.

Por su parte, el 15 de enero de 2024, la representación legal de Cruz Figueroa instó una *Moción Informativa con Relación a [la] Condició[n] Médica de la Demandante y Deposición de Esta.*[61] Según adujo, luego de regresar del receso de la época festiva, el 10 de enero de 2023, Cruz Figueroa le envió una misiva con fecha del 11 de diciembre de 2023, redactada por el psiquiatra que la atendía. Alegó que dicho escrito incluía las recomendaciones que el doctor entendía que ayudarían a la recuperación de Cruz Figueroa. En específico, indicó que el galeno había recomendado que Cruz Figueroa evitara todo tipo de contacto con Joaquín Hidalgo y que los procesos pendientes donde se requiriera la presencia de este último fueran celebrados de forma remota o por videoconferencia. Señaló que le había enviado dicha comunicación a todas las partes con el fin de

---

[59] Entrada Núm. 306 del Caso Núm. CA2019CV01732 en el SUMAC.
[60] Entrada Núm. 312 del Caso Núm. CA2019CV01732 en el SUMAC.
[61] Entrada Núm. 313 del Caso Núm. CA2019CV01732 en el SUMAC.

que tuvieran conocimiento de ello y en solicitud de que se intentaran tomar las medidas necesarias para evitar que la salud de Cruz Figueroa se afectara. En cuanto a la deposición de esta, alegó que su intención y la de su representada era comparecer, pero solicitaba que se tomaran las medidas o acomodos que garantizaran el estado de salud de Cruz Figueroa. Arguyó que, el 12 de enero de 2024, el representante legal de Joaquín Hidalgo se comprometió a tomar las medidas razonables para que Cruz Figueroa tuviera la menor interacción posible con Joaquín Hidalgo, pero reiteró su postura de que la deposición fuera presencial, tal como fue ordenado por el tribunal. Por otro lado, aceptó que –por error– confundió la fecha de la deposición, pues pensaba que sería el 17 de enero de 2024, pero indicó que las partes le aclararon que era el 16 de enero de 2024, fecha que tenía reservada y que, según alegó, estaba preparado para la referida toma de deposición. Por último, sostuvo que, a pesar de las recomendaciones del galeno, Cruz Figueroa asistiría de forma presencial a la toma de deposición; no obstante, como su representante legal, tenía la obligación de informarle al tribunal de la mencionada recomendación médica.

El 16 de enero de 2024, el foro *a quo* se dio por enterado de lo anterior mediante *Orden* a esos fines.[62]

Así las cosas, el 17 de enero de 2024, el representante legal de Joaquín Hidalgo instó una *Solicitud de Eliminación de Alegaciones por Cont[i]nuo y Reiterado Incumplimiento con Órdenes sobre Descubrimiento de Prueba.*[63] Argumentó que, el 16 de enero de 2024, tuvo que suspender la deposición de Cruz Figueroa. Particularizó que, si bien dicha parte asistió al Colegio de Abogados y Abogadas, no quiso entrar al salón donde se realizaría su toma de deposición. Planteó que Cruz Figueroa estaba en un estado de llanto al escuchar

---

[62] Entrada Núm. 314 del Caso Núm. CA2019CV01732 en el SUMAC.
[63] Entrada Núm. 316 del Caso Núm. CA2019CV01732 en el SUMAC.

la voz de Joaquín Hidalgo. Según especificó, le brindó tiempo a Cruz Figueroa para que se tranquilizara y poder comenzar la deposición, pero luego de unos minutos esta manifestó que no quería hablar con nadie, por lo que se procedió a levantar un acta de lo sucedido, incluyendo las posturas de las partes al respecto. Sostuvo que, ante las recomendaciones del doctor de Cruz Figueroa, intentó hacer el mayor acomodo razonable para que esta tuviera el menor contacto visual con Joaquín Hidalgo: se alquiló un salón doble en donde había una puerta plegadiza y se ubicó a Joaquín Hidalgo de tal forma que Cruz Figueroa no tuviese acceso visual a él.

La representación legal de Joaquín Hidalgo alegó en su moción que no existía ninguna razón válida que justificara el que Cruz Figueroa no pudiera ser depuesta en presencia de Joaquín Hidalgo. Argumentó que, aunque el contacto entre Joaquín Hidalgo y Cruz Figueroa se había limitado a los procesos judiciales, esta última había estado de forma presencial en la mayoría de las treinta (30) vistas aproximadas celebradas en el caso de alimentos, y no había tenido la reacción que tuvo en la toma de deposición al escuchar la voz de Joaquín Hidalgo. Reiteró que Cruz Figueroa continuaba incumpliendo injustificadamente con la toma de deposición, aun cuando era la persona que tocaba las puertas del tribunal solicitando un remedio. Indicó que había transcurrido más de un (1) año sin poder celebrar las deposiciones coordinadas, debido a las suspensiones atribuibles exclusivamente a Cruz Figueroa, a pesar de las múltiples órdenes y apercibimientos del tribunal. Según adujo, ello le había impedido presentar una solicitud de sentencia sumaria. Sostuvo, además, que, ante los incumplimientos crasos y reiterados de Cruz Figueroa, y a fin de que los procesos no se siguieran dilatando, procedía la eliminación de las alegaciones de dicha parte o la desestimación de la acción, así como la continuación de los procesos de la reconvención sin mayor

dilación. Igualmente, propuso que ADCON y la Asociación de Residentes fueran excluidos del proceso de liquidación de la comunidad de bienes.

Al día siguiente, Joaquín Hidalgo presentó un escrito mediante el cual solicitó que se dejara sin efecto la deposición que Cruz Figueroa le haría a este el 19 de enero de 2024.[64] Planteó que, ante la solicitud de eliminación de alegaciones pendiente de adjudicación, y toda vez que Cruz Figueroa debía ser la primera depuesta, procedía que se dejara sin efecto la deposición pautada para el día siguiente.

En respuesta, el 19 de enero de 2024, el representante legal de Cruz Figueroa se opuso.[65] Argumentó que, vencido el término para ello, el tribunal le había concedido a Joaquín Hidalgo hasta el 22 de diciembre de 2023 para notificar las contestaciones al descubrimiento de prueba pendiente. Indicó que, no fue hasta el mismo 22 de diciembre de 2023, a las 7:13 p.m. (fuera de horas laborables), que Joaquín Hidalgo notificó las referidas contestaciones. Señaló que aún Joaquín Hidalgo no había atendido las objeciones que le presentó el 26 de diciembre de 2023. Planteó que, al Joaquín Hidalgo incumplir con el descubrimiento de prueba que le fue cursado en noviembre de 2022, no era posible celebrar la deposición del 19 de enero de 2024, puesto que no tendría los documentos solicitados y no estaría preparado adecuadamente. Por otro lado, arguyó que, el 16 de enero de 2024, se levantó un acta en el que los abogados de los codemandados cancelaron las respectivas deposiciones hasta tanto se resolviera el asunto de la deposición de Cruz Figueroa, sin contar con su postura. Aclaró que, en ese momento, su prioridad era llevar a su representada de emergencia al médico de esta, debido a la condición que afrontaba, por lo que

---

[64] Entrada Núm. 318 del Caso Núm. CA2019CV01732 en el SUMAC.
[65] Entrada Núm. 321 del Caso Núm. CA2019CV01732 en el SUMAC.

se marchó inmediatamente del salón en donde se tomaría la deposición de Cruz Figueroa. Aseveró que, contrario a lo propuesto por el abogado de Joaquín Hidalgo, la deposición de este y de los demás codemandados quedaron suspendidas por las razones antes expuestas, lo que incluía el incumplimiento de Joaquín Hidalgo con el descubrimiento de prueba en múltiples ocasiones, sin tener consecuencias por ello.

Atendidas las posturas de las partes, el 19 de enero de 2024, el foro de origen emitió y notificó una *Orden* mediante la cual dejó sin efecto la deposición de Joaquín Hidalgo.[66]

Después de algunas incidencias procesales, y luego de concedida una prórroga a esos efectos,[67] el 30 de enero de 2024, el representante legal de Cruz Figueroa presentó un escrito intitulado *Moción en Cumplimiento de Orden y en Oposición a Solicitud de Eliminación de Alegaciones por Continuo y Reiterado Incumplimiento con Órdenes sobre Descubrimiento de Prueba.*[68] Narró lo sucedido el 16 de enero de 2024 y reiteró las razones por las cuales se suspendió la deposición de su representada. Sostuvo que lo propuesto por la representación legal de Joaquín Hidalgo era incorrecto, ya que Cruz Figueroa asistió oportunamente a su toma de deposición, por lo que no había incumplido ni evadido lo ordenado. Indicó que las recomendaciones del psiquiatra de Cruz Figueroa era que no tuviera contacto con Joaquín Hidalgo, no el disminuir el contacto visual con este. Alegó que ello se pudo haber cumplido, al igual que el derecho constitucional a la confrontación, mediante otros medios que las Reglas de Procedimiento Civil permitían. Reiteró que la condición de Cruz Figueroa provocó que este tuviera que realizar las gestiones

---

[66] Entrada Núm. 324 del Caso Núm. CA2019CV01732 en el SUMAC.
[67] Entradas Núm. 331 y 332 del Caso Núm. CA2019CV01732 en el SUMAC.
[68] Entrada Núm. 334 del Caso Núm. CA2019CV01732 en el SUMAC.

correspondientes para trasladarla de emergencia a la oficina del referido galeno.

En el mencionado escrito, la representación legal de Cruz Figueroa señaló que, hacía un (1) año, había informado a las partes y al tribunal que Cruz Figueroa se encontraba en un tratamiento por su condición de síndrome de estrés post-traumático, pero este había sido interrumpido en múltiples ocasiones por Joaquín Hidalgo. Particularizó que, el día de la deposición, Joaquín Hidalgo estaba al lado de su abogado en el salón contiguo al salón de conferencias, en el cual iba a ser depuesta Cruz Figueroa. Especificó que, si bien Joaquín Hidalgo estaba tapado parcialmente por una puerta de acordeón que separaba ambos salones, aún podía escucharse claramente. Añadió que también pretendían que su representada se sentara frente al abogado de Joaquín Hidalgo; es decir, al lado del referido separador donde –detrás– se encontraba Joaquín Hidalgo. Alegó que lo que provocó el ataque de pánico y la ansiedad de Cruz Figueroa, según diagnosticado por el médico de esta, fue el escuchar la voz de Joaquín Hidalgo mientras este se encontraba en el salón de conferencias.

Por otro lado, el representante legal de Cruz Figueroa destacó en su moción que había notificado a las partes y al tribunal las recomendaciones del galeno de su representada, previo a la celebración de la deposición, no con la intención de suspender el mencionado mecanismo de descubrimiento de prueba, sino para que se tomaran las medidas necesarias para salvaguardar la salud de Cruz Figueroa. Arguyó que la deposición de Cruz Figueroa se pudo haber realizado por teléfono, videoconferencia o por cualquier otro método electrónico a distancia, conforme contemplaba la Regla 27.4 de Procedimiento Civil, 32 LPRA Ap. V, R. 27.4. Reiteró que Joaquín Hidalgo era quien constantemente perseguía a Cruz Figueroa y, por tanto, quien había propiciado que esta no pudiera

sentarse en el mismo lugar donde él se encontraba; asunto que había sido previamente fundamentado y sobre lo cual el médico de esta podía testificar. Asimismo, aseveró que el tribunal aún guardaba discreción para modificar los mecanismos de descubrimiento de prueba a utilizarse para evitar un estancamiento en el proceso.

En virtud de lo anterior, el abogado de Cruz Figueroa insistió que se continuara con el proceso judicial pendiente y que se atendieran los reclamos de Cruz Figueroa por medio de su solicitud de interdicto preliminar incoado en el año 2019. Resaltó que, previo a la desestimación de la acción de epígrafe, el tribunal debía auscultar la posibilidad de activar otros medios para la celebración de la deposición en cuestión. De otro lado, reiteró el incumplimiento constante de Joaquín Hidalgo con el descubrimiento de prueba y especificó que este no había notificado las contestaciones enmendadas al requerimiento de producción de documentos que le fue cursado el 14 de noviembre de 2022, ni había contestado las objeciones sobre ese particular, incumplimiento que había quedado impune.

El 26 de febrero de 2024, la Asociación de Residentes presentó una *Urgente Moción Solicitando se Deje sin Efecto la Deposición del Sr. Rafael Nieves (Presidente de ARBL) y Solicitando la Desestimación del Presente Caso Bajo la Regla 34.3 y 39.2 de Procedimiento Civil.*[69] Indicó que Cruz Figueroa había incumplido con la producción de documentos ordenada el 8 de diciembre de 2023. Enfatizó que había realizado múltiples gestiones para que Cruz Figueroa cumpliera con el descubrimiento de prueba o que desistiera con perjuicio de la acción en su contra, pero no había tenido éxito. Según adujo, el tribunal había tomado todas las medidas necesarias para

---

[69] Entrada Núm. 342 del Caso Núm. CA2019CV01732 en el SUMAC.

garantizarle a Cruz Figueroa su día en corte y le había concedido múltiples oportunidades en torno al descubrimiento de prueba. Argumentó que Cruz Figueroa incumplió todas las órdenes del tribunal, lo cual denotaba una falta de interés en su caso y un grave menosprecio de la autoridad del foro primario. Planteó que era evidente que Cruz Figueroa no deseaba ser depuesta y esto había ocasionado una dilación inverosímil e inaceptable en el caso, toda vez que el descubrimiento de prueba estaba completamente paralizado. Sostuvo que, toda vez que se había acordado en la vista celebrada el 1 de noviembre de 2023 que Cruz Figueroa sería la primera en ser depuesta, procedía que la deposición del presidente de la Junta de la Asociación de Residentes pautada para el 27 de febrero de 2024 se dejara sin efecto. Asimismo, solicitó que se eliminaran las alegaciones de Cruz Figueroa por los numerosos incumplimientos con las órdenes impartidas por el tribunal. En la alternativa, solicitó que se desestimara con perjuicio la acción de epígrafe por no existir ninguna justificación que ameritara la concesión de remedio alguno a favor de Cruz Figueroa.

El mismo día, el Tribunal de Primera Instancia emitió y notificó una *Orden* mediante la cual expresó que se encontraba estudiando detenidamente las mociones presentadas para su consideración.[70] Por tal razón, dejó sin efecto la deposición mientras se resolvía lo relacionado a la calendarización del descubrimiento de prueba.

Por su parte, en igual fecha, Joaquín Hidalgo duplicó la *Moción en Cumplimiento de Orden y en Oposición a Solicitud de Eliminación de Alegaciones por Continuo y Reiterado Incumplimiento con Órdenes sobre Descubrimiento de Prueba* instada por Cruz Figueroa.[71] Planteó que, independientemente del tiempo que había

---

[70] Entrada Núm. 343 del Caso Núm. CA2019CV01732 en el SUMAC.
[71] Entrada Núm. 344 del Caso Núm. CA2019CV01732 en el SUMAC.

transcurrido de la solicitud de producción de documentos y el descubrimiento de prueba cursado por Cruz Figueroa, había cumplido oportunamente con lo ordenado por el tribunal sobre las controversias que se habían planteado del descubrimiento de prueba. En cuanto a las objeciones cursadas por Cruz Figueroa sobre la producción de documentos, alegó que estas versaban sobre documentos que se encontraban fuera del alcance del descubrimiento de prueba por no ser pertinentes a las controversias de la acción de epígrafe. Argumentó que Cruz Figueroa se negó a ser depuesta el 16 de enero de 2024 bajo el fundamento de que Joaquín Hidalgo estaba presente, pero unos días antes esta lo vio y lo persiguió en un supermercado sin problema alguno. Narró con detalle lo sucedido el 29 de diciembre de 2023 en el supermercado y junto a su moción incluyó imágenes obtenidas de las cámaras de seguridad del mencionado establecimiento.[72] Planteó que el foro primario tenía ante sí dos acciones diametralmente opuestas: Cruz Figueroa no podía estar en una deposición con otros abogados y Joaquín Hidalgo, pero no tenía problema en ver de cerca a Joaquín Hidalgo y perseguirlo en un supermercado, sin abogados presentes. Arguyó que no merecía credibilidad del tribunal una condición que aparentaba ser selectiva. Sostuvo que Cruz Figueroa había sido frívola en su reclamo judicial y, por ello, entendía que se tenían que eliminar las alegaciones de esta.

El 27 de febrero de 2024, el foro primario emitió y notificó una *Resolución Nunc Pro Tunc* mediante la cual declaró Ha Lugar la *Solicitud de Eliminación de Alegaciones por Cont[i]nuo y Reiterado Incumplimiento con Órdenes sobre Descubrimiento de Prueba*

---

[72] Cabe destacar que, a solicitud de Joaquín Hidalgo, el Tribunal de Primera Instancia ordenó al supermercado en cuestión a que reprodujera las imágenes obtenidas por las cámaras de seguridad el día de los presuntos hechos.

presentada por Joaquín Hidalgo.[73] En particular, el foro *a quo*

expresó lo siguiente:

> En el caso de marras, este [t]ribunal ha priorizado el fino balance entre los intereses de las partes y la sana administración de la justicia. En múltiples ocasiones hemos ordenado la recalendarización de deposiciones para armonizar el proceso del pleito con el delicado estado de salud de la demandante, con miras a que el derecho de descubrimiento de prueba de la parte demandada no fuese afectado sustancialmente. Las partes en múltiples ocasiones pautaron la deposición de la parte demandante en las fechas del 16 de noviembre 2022, el 10 de enero de 2023, el 13 de febrero de 2023 y el 16 de enero de 2024. Ninguna[s] de las fechas anteriormente citadas fueron fructíferas para la consecución de la toma de deposición, puesto que la parte demandante arguyó dificultades de salud. Se le advirtió a la parte demandante que la incomparecencia a la toma de deposición estaba en contravención del derecho de la parte demandada a su descubrimiento de prueba y las consecuencias que pudiese acarrear el incumplimiento de las [ó]rdenes de descubrir la prueba a través de la deposición. En corte abierta, advertimos a la parte demandante, como segunda advertencia, la posibilidad de sanciones económicas por los incumplimientos de las órdenes del tribunal. Ante el incumplimiento reiterado, impusimos sanciones económicas a la parte demandante por incumplimiento de [ó]rdenes con respecto al descubrimiento de prueba, de nuevo, con la parte demandante advertida de la posibilidad de estas sanciones y de la posibilidad de la severa sanción de la eliminación de las alegaciones a tenor con el mandato de la R. 39.2 de Procedimiento Civil y la jurisprudencia. Siendo la parte demandante debidamente advertida en múltiples ocasiones, la imposibilidad de llevar a cabo la deposición de la Sra. Cruz Figueroa el día 16 de enero de 2024, nos deja sin lugar a intervenir más allá que para salvaguardar la economía procesal del Tribunal y los derechos que cobijan a los demandados de un descubrimiento de prueba robusto y amplio, para ordenar la eliminación de las alegaciones bajo la R. 34.3 (b) (3) de Procedimiento Civil, *supra*[,] y bajo la jurisprudencia aplicable discutida en esta resolución.

En desacuerdo, el 13 de marzo de 2024, Cruz Figueroa

presentó una *Solicitud de Reconsideración.*[74] Por su parte, el 8 de

abril de 2024, Joaquín Hidalgo se opuso.[75] De igual forma, el mismo

día, ADCON se opuso a la moción de reconsideración de Cruz

---

[73] Entrada Núm. 350 del Caso Núm. CA2019CV01732 en el SUMAC. Cabe señalar que la *Orden* emitida en igual fecha fue enmendada a los únicos efectos de cambiarle el título a *Resolución.* Véase, Entrada Núm. 355 del Caso Núm. CA2019CV01732 en el SUMAC.

[74] Entrada Núm. 356 del Caso Núm. CA2019CV01732 en el SUMAC

[75] Entrada Núm. 359 del Caso Núm. CA2019CV01732 en el SUMAC.

Figueroa.[76] De otro lado, el 12 de abril de 2024, la Asociación de Residentes también se opuso.[77]

Evaluadas las posturas de las partes, el 12 de abril de 2024, el foro apelado emitió y notificó una *Orden* mediante la cual declaró No Ha Lugar la *Solicitud de Reconsideración* instada por Cruz Figueroa.[78] A su vez, ordenó la continuación de los procedimientos.

Así las cosas, y luego de celebrada una vista del estado de los procedimientos,[79] el 20 de septiembre de 2024, el Tribunal de Primera Instancia emitió y notificó la *Sentencia Parcial* que nos ocupa.[80] En esta, el foro primario desestimó todas las causas de acción pendientes de resolución que se instaron en la *Demanda* incoada por Cruz Figueroa en contra de Joaquín Hidalgo, ADCON y la Asociación de Residentes.

En igual fecha, el foro *a quo* emitió y notificó la *Resolución* recurrida, mediante la cual le anotó la rebeldía a Cruz Figueroa en cuanto a la reconvención instada por Joaquín Hidalgo, al amparo de las Reglas 34.3(b)(3) y 45 de Procedimiento Civil, 32 LPRA Ap. V, R. 34.3(b)(3) y 45, y de lo resuelto en *Mitsubishi Motor v. Lunor y otros*, 212 DPR 807 (2023).[81]

Inconforme, el 21 de octubre de 2024, la parte apelante acudió ante nos mediante el recurso de epígrafe y realizó el siguiente señalamiento de error:

> Erró el TPI al dictar Sentencia Parcial mediante la cual desestimó la Demanda presentada por la compareciente en contra de todos los codemandados y, en adición[,] dictar [una] Resolución, mediante la cual se le anotó la rebeldía para efectos de la Reconvención incoada en su contra.

El 6 de noviembre de 2024, este Foro emitió una *Resolución*, mediante la cual acogimos el recurso como una apelación.

---

[76] Entrada Núm. 366 del Caso Núm. CA2019CV01732 en el SUMAC.
[77] Entrada Núm. 374 del Caso Núm. CA2019CV01732 en el SUMAC.
[78] Entrada Núm. 376 del Caso Núm. CA2019CV01732 en el SUMAC.
[79] Entrada Núm. 420 del Caso Núm. CA2019CV01732 en el SUMAC.
[80] Entrada Núm. 413 del Caso Núm. CA2019CV01732 en el SUMAC.
[81] Entrada Núm. 414 del Caso Núm. CA2019CV01732 en el SUMAC.

Asimismo, le concedimos un término a la parte apelada para presentar su postura.

En cumplimiento con dicha orden, y luego de una prórroga a esos efectos, la Asociación de Residentes compareció mediante *Oposición al Alegato de Certiorari Acogido como Apelación* el 9 de diciembre del mismo año. Por su parte, el 7 de enero de 2025, Joaquín Hidalgo compareció mediante *Alegato de la Parte Apelada Juan Marcos Joaquín Hidalgo.*

Con el beneficio de la comparecencia de las partes, procedemos a resolver.

**II**

**A**

Sabido es que el descubrimiento de prueba es el mecanismo que utilizan las partes para obtener hechos, título, documentos u otras cosas que están en poder de la parte demandada o que son de su exclusivo conocimiento y que son necesarias para hacer valer sus derechos. *Mcneil Healthcare v. Mun. Las Piedras II,* 206 DPR 659, 672 (2021). El propósito del descubrimiento de prueba es: (1) delimitar las controversias; (2) facilitar la consecución de evidencia; (3) evitar las sorpresas en el juicio; (4) facilitar la búsqueda de la verdad, y (5) perpetuar la prueba. *Torres González v. Zaragoza Meléndez,* 211 DPR 821, 844 (2023); *García Rivera et al. v. Enríquez,* 153 DPR 323, 333 (2001). Es por ello que, desde *Sierra v. Tribunal Superior,* 81 DPR 554, 560 (1959), el Tribunal Supremo de Puerto Rico ha reconocido lo valioso y necesario que resulta un descubrimiento de prueba amplio y liberal. *Torres González v. Zaragoza Meléndez,* supra; *Mcneil Healthcare v. Mun. Las Piedras II,* supra, pág. 672. Dicho alcance amplio y liberal del descubrimiento de prueba, esencialmente, propicia las transacciones, acelera los procedimientos y evita sorpresas indeseables durante el juicio en su fondo. *Íd.*

Ahora bien, lo anterior no significa que el descubrimiento de prueba sea una carta en blanco para utilizarse indiscriminadamente para hostigar y perturbar a una parte. *Torres González v. Zaragoza Meléndez*, supra; *Vincenti v. Saldaña*, 157 DPR 37, 54 (2002). Es en ese escenario que el Tribunal de Primera Instancia, en el ejercicio de su sana discreción, puede limitar el alcance y los mecanismos a utilizarse, ya que su obligación es garantizar una solución justa, rápida y económica del caso, sin que ello constituya alguna ventaja para cualquiera de las partes en el pleito. *Íd.* Sobre ese particular, nuestro Tribunal Supremo ha expresado que los foros apelativos no han de interferir con el foro primario en el ejercicio de sus facultades discrecionales**,** excepto en aquellas situaciones en que se demuestre que este último: (1) actuó con prejuicio o parcialidad; (2) incurrió en un craso abuso de discreción, o (3) se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo. *Torres González v. Zaragoza Meléndez*, supra, pág. 846, citando a *Rivera y otros v. Bco. Popular*, 152 DPR 140, 155 (2000). Véase, además, *Mcneil Healthcare v. Mun. Las Piedras II*, supra, pág. 672.

**B**

Por otro lado, en nuestro ordenamiento jurídico se favorece la política judicial de que los casos se ventilen en sus méritos. *VS PR, LLC v. Drift-Wind*, 207 DPR 253, 264 (2021); *Mercado Figueroa v. Mun. de San Juan*, 192 DPR 279, 287-288 (2015). Tal principio ha de ir en armonía con el propósito de que los pleitos se tramiten de forma justa, rápida y económica. *Íd.* Es decir, que, aunque se favorece la ventilación de los casos en sus méritos, ello "no significa que una parte adquiera el derecho a que su caso tenga vida eterna en los tribunales manteniendo a la otra parte en un estado de incertidumbre, sin más excusa para su falta de diligencia e interés en su tramitación que una escueta referencia a circunstancias

especiales". *Mun. de Arecibo v. Almac. Yakima*, 154 DPR 217, 221-222 (2001).

A tenor con ello, los tribunales están facultados con el poder de sancionar a las partes mediante distintos mecanismos cuando permanecen en la negativa de obedecer sus órdenes, atentando así contra la sana administración de la justicia. Entre los mecanismos reconocidos, la Regla 34.3 de Procedimiento Civil, 32 LPRA Ap. V, R. 34.3, dispone lo pertinente a incumplimientos con el descubrimiento de prueba. En estas instancias el tribunal podrá: (a) imponer desacato; (b) ordenar que se tengan por ciertas y probados para efectos del pleito ciertas materias comprendidas en sus órdenes; (c) prohibir la presentación de cierta evidencia; (d) eliminar alegaciones; (e) suspender procedimientos ulteriores; (f) desestimar el pleito; (g) dictar sentencia en rebeldía; (h) imponer sanciones económicas a cualquier parte, incluyendo a testigos y/o representación legal; y, (i) condenar al pago de los gastos incurridos, incluyendo honorarios de abogado o abogada.

Con relación a la última alternativa, y específicamente a los casos en que se incumple con comparecer a una deposición o presentar las debidas contestaciones a los interrogatorios, la Regla 34.5 de Procedimiento Civil, 32 LPRA Ap. V, R. 34.5, establece que:

> Si una parte, o un(a) funcionario(a) o agente administrador(a) de una parte o una persona designada para testificar a su nombre[,] según disponen las Reglas 27.6 ó 28 de este apéndice, deja de:
>
> (1) Comparecer ante la persona ante quien se ha de tomar su deposición después de haber sido debidamente notificada, o
> (2) presentar contestaciones u objeciones a los interrogatorios sometidos de acuerdo con la Regla 30 de este apéndice después de habérseles notificado debidamente, […]
> (3) […] el tribunal, a solicitud de parte, podrá dictar, con relación al incumplimiento, aquellas órdenes que sean justas, entre ellas, podrá tomar cualquier acción de las autorizadas en las cláusulas (1), (2) y (3) del inciso (b) de la Regla 34.3. En lugar de

cualquiera de las órdenes anteriores o adicional a ellas, el tribunal impondrá a la parte que incumpla o al abogado o abogada que la aconsejó, o a ambos, el pago del importe de los gastos razonables ocasionados por la negativa, incluyendo honorarios de abogado [o abogada], a menos que el tribunal determine que existía una justificación válida para el incumplimiento o, que[,] dentro de las circunstancias, el pago de los gastos resultaría injusto.

[...]

Si una parte que notificó la toma de una deposición deja de comparecer y otra parte comparece en persona o por medio de abogado o abogada conforme a dicha notificación, el tribunal podrá ordenar a la parte que hizo la notificación que pague a la otra el importe de los gastos razonables en que hayan incurrido para comparecer, incluyendo una suma razonable para honorarios de abogado [o abogada].

Si una parte que notificó la toma de una deposición a una persona testigo deja de entregarle una citación y [e]sta, por razón de tal omisión, no comparece, y si otra parte asiste en persona o por medio de abogado o abogada porque espera que la deposición de dicha persona testigo ha de ser tomada, el tribunal podrá ordenar a la parte que hizo la notificación que pague a la otra el importe de los gastos razonables en que hayan incurrido para comparecer, incluyendo una suma razonable para honorarios de abogado [o abogada].

Por otro lado, en cuanto al mecanismo de desestimación cuando se incumple con lo antes expuesto, la Regla 39.2(a) de Procedimiento Civil, 32 LPRA Ap. V, R. 39.2(a), dispone lo siguiente:

(a) Si la parte demandante deja de cumplir con estas reglas o con cualquier orden del tribunal, el tribunal a iniciativa propia o a solicitud de la parte demandada podrá decretar la desestimación del pleito o de cualquier reclamación contra [e]sta o la eliminación de las alegaciones, según corresponda.

Cuando se trate de un primer incumplimiento, la severa sanción de la desestimación de la demanda o la eliminación de las alegaciones tan s[o]lo procederá después que el tribunal, en primer término, haya apercibido al abogado o abogada de la parte de la situación y se le haya concedido la oportunidad para responder. Si el abogado o abogada de la parte no responde a tal apercibimiento, el tribunal procederá a imponer sanciones al abogado o abogada de la parte y se notificará directamente a la parte sobre la situación. Luego de que la parte haya sido debidamente informada o apercibida de la situación y de las consecuencias que pueda tener el que la

> misma no sea corregida, el tribunal podrá ordenar la desestimación del pleito o la eliminación de las alegaciones. El tribunal concederá a la parte un término de tiempo razonable para corregir la situación que en ningún caso será menor de treinta (30) días, a menos que las circunstancias del caso justifiquen que se reduzca el término.
>
> [...]. Véase, además, *Mun. de Arecibo v. Almac. Yakima*, supra; *Maldonado v. Srio. de Rec. Naturales*, 113 DPR 494, 498 (1982).

La citada norma jurisprudencial fue avalada por la Asamblea Legislativa con la aprobación de la Ley Núm. 493 del 29 de septiembre de 2004 (Ley Núm. 493-2004), la cual enmendó la Regla 39.2(a) de Procedimiento Civil de 1979 (derogada). *HRS Erase v. CMT*, 205 DPR 689, 705-706 (2020). Posteriormente, dicha regla fue adoptada en las actuales Reglas de Procedimiento Civil de 2009, *supra*. En lo pertinente, la Exposición de Motivos de la mencionada enmienda promovida por la Ley Núm. 493-2004, *supra*, indica que:

> Es inaceptable que nuestros tribunales de justicia desestimen casos por situaciones fuera del control de las partes, sin que se les permita actuar sobre las violaciones que se le han señalado. Por ejemplo, en ocasiones, los tribunales archivan pleitos porque el abogado [o abogada] de la parte no ha cumplido con alguna disposición legal o con alguna orden del tribunal. En ocasiones, se ha impuesto tan severa sanción porque no se ha recibido una notificación de alguna de las partes o del tribunal. En tales casos, no debe proceder la desestimación, pues constituye una sanción demasiado severa contra la parte, considerando que la falta la cometió su abogado [o abogada] y no la parte y/o que la causa de la desestimación no está bajo el control de la parte ni del propio abogado [o abogada].
>
> El ordenamiento jurídico debe atemperarse a las expresiones del Tribunal Supremo de Puerto Rico sobre la materia objeto de este proyecto. Se trata de un asunto de justicia sustancial que no ha sido atendido adecuadamente por nuestro ordenamiento jurídico [...].

Es decir, en aras de garantizar el debido proceso de ley, el tribunal está obligado a seguir un procedimiento claramente prestablecido antes de ordenar la desestimación de la demanda o la eliminación de las alegaciones. En otras palabras, la parte tiene que ser notificada por el tribunal de la situación de incumplimiento,

KLCE202401140                                                          45

junto a sus consecuencias y, además, se le tiene que brindar la oportunidad de tomar las medidas necesarias para corregirla. De lo contrario, se violaría el debido proceso de ley, asunto que encuentra apoyo en las siguientes expresiones de nuestro Tribunal Supremo:

> [...] Desestimar de inmediato una demanda, o una contestación, como medio de aplicar sanción al proceder o a una actitud del abogado [o abogada] en el curso del pleito, tiene el efecto de privar a un ciudadano [o ciudadana] de la función judicial de adjudicación que forma parte de nuestra estructura constitucional, privándole de la oportunidad de un día en corte para hacer valer en los méritos la legitimidad de su derecho a reclamar si es [parte] demandante, o la legitimidad y mérito de una defensa, si es [parte] demandada]. Este es un valor en el orden social demasiado apreciable para ser prontamente sacrificado, aun cuando la sanción se dé en aras del pronto despacho de los asuntos radicados y de una rápida administración de justicia. Si los pleitos judiciales se desestimaren por esta vía indistintamente, se habrán despachado los asuntos, no hay duda, pero tal vez no habría quedado mucho de justicia a impartir. *Ramírez de Arellano v. Srio. de Hacienda*, 85 DPR 823, 829 (1962).

Por lo anterior, la determinación de desestimar una demanda o eliminar las alegaciones de una parte debe tomarse juiciosa y apropiadamente. *Mejías et al. v. Carrasquillo et al.*, 185 DPR 288, 298 (2012); *Maldonado v. Srio. de Rec. Naturales*, supra. En ese sentido, se debe considerar que:

> [L]a desestimación de un caso como sanción, debe prevalecer únicamente en situaciones extremas en las cuales haya quedado demostrado de manera clara e inequívoca la desatención y el abandono total de la parte con interés y "después que otras sanciones hayan probado ser ineficaces en el orden de administrar justicia y, en todo caso, no debería procederse a ella sin un previo apercibimiento". *Mun. de Arecibo v. Almac. Yakima*, supra, pág. 222, citando a *Ramírez de Arellano v. Srio. de Hacienda,* supra, págs. 829-830. (Énfasis omitido).

El requisito de realizar un previo apercibimiento a la parte antes de proceder con la desestimación es un elemento del debido proceso que nuestro ordenamiento jurídico ha reconocido para estas circunstancias. Según las expresiones de nuestro más Alto Foro:

> [...] La experiencia señala que en la gran mayoría de los casos [...] las partes no están enteradas de la actuación negligente de sus abogados [o abogadas] y, al advenir

en conocimiento de ello, la situación es corregida de inmediato. Una parte que haya sido informada y apercibida de esta clase de situación y no tome acción correctiva, nunca se podrá querellar, ante ningún foro, de que se le despojó injustificadamente de su causa de acción y/o defensas. *Maldonado v. Srio. de Rec. Naturales*, supra, pág. 498.

Asimismo, "[e]l fundamento para no imponer sanciones drásticas al cliente es que de 'ordinario la parte que ejercita su derecho en corte no está informada de los trámites rutinarios'". *Dávila v. Hosp. San Miguel, Inc.,* 117 DPR 807, 814 (1986), citando a *Ramírez de Arellano v. Srio. de Hacienda*, supra, pág. 830. Por lo tanto, "en ausencia de contumacia o dejadez extrema, la negativa de un tribunal a emplear sanciones menos drásticas que la desestimación, constituye una privación al derecho constitucional a ser oído que es corolario del debido proceso de ley". J. Echevarría Vargas, *Procedimiento Civil Puertorriqueño*, 2012, pág. 252, citando a *Societe Internationale v. Rogers*, 357 US 197 (1958). No podemos perder de perspectiva que "el uso desmesurado de[l] mecanismo procesal [de la desestimación] puede vulnerar el propósito que persiguen los tribunales, que es impartir justicia". *Sánchez Rodríguez v. Adm. de Corrección*, 177 DPR 714, 721 (2009).

Esbozada la norma jurídica, procedemos a aplicarla al recurso ante nos.

**III**

Como único señalamiento de error, la parte apelante sostiene que el Tribunal de Primera Instancia incidió al desestimar la acción de epígrafe mediante *Sentencia Parcial* y anotarle la rebeldía en la reconvención incoada en su contra por Joaquín Hidalgo. Especifica que el foro *a quo* tomó la drástica medida de eliminar sus alegaciones y desestimar el pleito sin evaluar la totalidad de las circunstancias del caso. En apoyo a su contención, argumenta que Joaquín Hidalgo había incumplido con las órdenes del tribunal relacionadas al descubrimiento de prueba, sin recibir sanción

alguna. Sostiene que ha sido diligente en la tramitación de su caso, al igual que en el descubrimiento de prueba, ya que, a pesar de contar con circunstancias excepcionales en torno a una condición médica, se presentó a la deposición pautada para el 16 de enero de 2024, pero fue expuesta a una situación estresante que le impidió llevarla a cabo. Alega que el foro juzgador debió dar un trato igualitario a Joaquín Hidalgo y desestimarle la reconvención por haber incumplido constantemente con el descubrimiento de prueba. En la alternativa, plantea que el foro sentenciador debió permitir que esta pudiera defenderse adecuadamente de la reconvención instada en su contra. Luego de un examen minucioso del expediente ante nos, colegimos que el foro primario no incidió en su proceder. Nos explicamos.

Según esbozado, la desestimación de una demanda ha sido catalogada como la sanción máxima contra una parte considerando que existe una política pública de que los casos se ventilen en sus méritos. Ante un primer incumplimiento con cualquier orden del tribunal, corresponde –en primera instancia– apercibir al representante legal de la parte que incumplió concediéndole oportunidad para contestar, y ordenar la consignación de pago dentro de un término perentorio. Luego de ello, si el representante legal no responde a la orden del tribunal, corresponde imponerle sanciones y que se le notifique directamente a la parte sobre la situación. Después de que la parte haya sido debidamente informada sobre el asunto, el tribunal podrá ordenar la desestimación del pleito o la eliminación de las alegaciones, lo cual necesariamente conlleva un análisis de la totalidad de las circunstancias procesales.

El caso de autos cuenta con un extenso trámite procesal que resulta inoficioso reproducir, pues fue ampliamente detallado en la primera parte de este escrito. No obstante, es imperativo resaltar

que la acción de epígrafe fue incoada por la apelante el 16 de mayo de 2019, mientras que el descubrimiento de prueba comenzó en el año 2021. A la fecha de la emisión de la *Resolución* y *Sentencia Parcial* que nos ocupa, la acción de epígrafe se encontraba todavía en las etapas iniciales del descubrimiento de prueba. Es decir, dicho procedimiento ha sido dilatado por alrededor de tres (3) años. Ello, en contravención a los principios cardinales de las Reglas de Procedimiento Civil que buscan la solución, justa, rápida y económica de los pleitos. Ante tal escenario, nos corresponde dilucidar si el foro apelado cumplió con los requerimientos de la Regla 39.2(a) de Procedimiento Civil, *supra*, al emitir las determinaciones que tenemos a nuestro haber.

Del expediente ante nos surge que el Tribunal de Primera Instancia emitió varias órdenes con relación al descubrimeinto de prueba. Sin embargo, en múltiples ocasiones, la deposición de Cruz Figueroa fue cancelada y recalendarizada. La apelante tampoco cumplió con la producción oportuna de los documentos requeridos por la parte apelada. Al revisar sosegadamente el voluminoso tracto procesal, no cabe duda de que estas suspensiones y dilaciones al descubrimiento de prueba fueron ocasionadas por la parte apelante, mas no por el apelado, Joaquín Hidalgo.

Ante dichas circunstancias, el foro primario apercibió a la apelante y a su representación legal sobre posibles sanciones económicas o la eliminación de las alegaciones si no cumplían con lo ordenado sobre el descubrimiento de prueba. Sin embargo, por el reiterado incumplimiento de la apelante, previo a la severa sanción de desestimar la acción de epígrafe, el foro primario le impuso una sanción económica al representante legal de esta. Luego de satisfecha la sanción, el incumplimiento de Cruz Figueroa con las órdenes del tribunal continuó, aun con los apercibimientos del tribunal sobre la posibilidad de imponerle sanciones mayores.

Aun cuando la parte apelada le solicitó al tribunal en varias ocasiones que eliminara las alegaciones de Cruz Figueroa ante su recurrente incumplimiento, el foro *a quo* optó –dentro de su sana discreción– por concederle a las partes la oportunidad de coordinar y llevar a cabo la deposición de la apelante, así como la producción de documentos pendiente. Asimismo, el foro juzgador exhortó a la representación legal de las partes a que promovieran la comunicación para poder cumplir con lo ordenado y culminar el descubrimiento de prueba. No obstante, los incumplimientos persistieron y el tribunal de instancia eliminó las alegaciones de Cruz Figueroa, desestimó su causa de acción y le anotó la rebeldía en cuanto a la reconvención. Ello, luego de cumplir con el proceso requerido por la precitada Regla 39.2(a) de Procedimiento Civil.

La parte apelante arguye que su incumplimiento, específicamente con la toma de deposición, estaba justificado por su condición de salud y tratamiento médico. Añade que dicha situación se exacerbó por presuntas actuaciones de Joaquín Hidalgo en otro pleito ante una sala de familia, lo cual le imposibilitaba participar de una toma de deposición presencial, por ser un proceso estresante. No le asiste la razón.

En primer lugar, lo que ocurra en otro pleito judicial que no está consolidado con la acción de epígrafe, no debe incidir con el trámite procesal del caso de autos. El Tribunal de Primera Instancia debe limitarse a resolver las controversias que tiene ante sí. En segundo lugar, si bien es cierto que dicha parte contaba con certificaciones médicas que le impedían participar de la toma de deposición en ciertas fechas, desde que comenzó el descubrimiento de prueba en el año 2021, hubo múltiples oportunidades para llevar a cabo dicho mecanismo de descubrimiento de prueba y entregar oportunamente los documentos solicitados sin interrumpir su tratamiento.

Durante los últimos tres (3) años, la apelante no realizó actuaciones que promovieran efectivamente la toma de su deposición. Por el contrario, surge del expediente ante nos que Cruz Figueroa pretendía que la parte apelada continuara descubriendo prueba a su favor, mientras esta permanecía en constante incumplimiento de las órdenes del foro sentenciador. Cabe resaltar que la apelante fue quien incoó la acción de epígrafe y activó la maquinaria judicial para realizar su reclamo, a sabiendas de que todo proceso judicial tiende a ser contencioso. La naturaleza de los pleitos ante los tribunales no exime a los litigantes de su deber de ser diligentes y proactivos al tramitar los casos. Recordemos que, aunque se favorece la ventilación de los casos en sus méritos, ello no significa que una parte adquiera el derecho a que su caso tenga vida eterna en los tribunales y que, de esa manera, mantenga a la otra parte en un estado de incertidumbre.

Examinado el tortuoso trámite procesal, y luego de un análisis de la totalidad de las circunstancias, resulta forzoso concluir que el Tribunal de Primera Instancia no erró al desestimar la acción de epígrafe y anotar la rebeldía de la apelante en cuanto a la reconvención pendiente de adjudicación. En consecuencia, el error señalado no se cometió, por lo que procede confirmar la *Resolución* recurrida y la *Sentencia Parcial* apelada.

**IV**

Por los fundamentos que anteceden, confirmamos las determinaciones apeladas.

Lo acordó el Tribunal y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones
